**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0619n.06
Filed: August 24, 2007

No. 06-3122

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LEATHERWORKS PARTNERSHIP, ET AL.,
  *Plaintiffs-Appellants,*

    v.

BERK REALTY, INTERNATIONAL TECHNICAL
POLYMER SYSTEMS, INC., M. BERKOWITZ
& CO, INC., SAMUEL H. BERKOWITZ,
  *Defendants-Appellees.*

        On Appeal from the
        United States District Court for
        the Northern District of Ohio

_____

Before: KENNEDY, MOORE, and McKEAGUE, Circuit Judges

**KENNEDY, Circuit Judge.** Leatherworks Partnership and Navy Friends (hereinafter "Leatherworks") appeal a decision of the United States District Court for the Northern District of Ohio, dismissing all counts of their federal complaint *sua sponte* based on collateral estoppel. Leatherworks asserts that the district court erred in dismissing its action on collateral estoppel grounds, claiming that the district court abused its discretion procedurally in dismissing all of appellants' claims *sua sponte* without notice to the appellants that it was considering collateral estoppel. Leatherworks also asserts that the district court committed substantive errors in dismissing all of the counts on the basis of collateral estoppel. As we find that each of Leatherworks's claims, with the exception of the Count I breach of contract claim that it effectively conceded to be precluded at oral argument, arises by reason of events alleged to occur after the state court judgment issued, we REVERSE the district court's dismissal of Leatherworks's Counts II through VI based

on collateral estoppel and remand for disposition of each of these claims on the merits or other procedural basis. We AFFIRM the district court's dismissal of Leatherworks's Count I breach of contract claim. Because we reverse the finding of collateral estoppel on all claims still contested, we need not decide whether the *sua sponte* nature of the district judge's dismissal pursuant to collateral estoppel failed to provide notice to the parties.

## BACKGROUND

On December 15, 1993, Leatherworks Joint Venture (now Leatherworks Partnership) purchased 26.5 acres of land zoned for heavy industry from defendant Berk Realty for $200,000. A four-story brick structure existed on the property, as well as quantities of titanium and other hazardous items, which the former owner continued to store on the property. Under the terms of the purchase agreement, Leatherworks agreed that it had inspected the property and accepted it "as-is" and "where-is," with the seller expressly making "no representations or warranties whatsoever with respect to its condition." The agreement "permitted [Berk Realty] to store at no charge its titanium and other miscellaneous metal inventory" without charge in exchange for Berk Realty's promises to "use its best efforts to remove such inventory within such 24 month time period[]" and to pay "a reasonable rental value" if it failed to remove the inventory within 24 months. Berk Realty agreed to "use reasonable care . . . and . . . leave the Property in a clean and safe condition" when removing the inventory. The purchase agreement contained a clause stating that it "set[] forth the entire understanding of the parties with respect to this transaction."

On August 28, 1998, Berk Realty, International Technical Polymer Systems, Samuel Berkowitz, and M. Berkowitz & Co. (hereinafter "Berk Realty et al.") filed suit in the Trumbull County Court of Common Pleas (Case No. 98-CV-1468) against Leatherworks and the lessee of gas

2

drilling rights on the subject property. The parties settled this case, and the December 16, 1999 judgment entry incorporated their settlement agreement. Under the terms of this judgment, "[t]itanium 'grindings' inventory located at the Leatherworks property shall be removed no later than August 31, 2000," by Berk Realty, the "[r]emoval shall be to ground level," and Leatherworks is entitled to inspect the property. The agreement also allowed Leatherworks to charge rent for failure to remove the titanium "grindings" by the date provided. The judgment entry recited that Berk Realty et al. "warranted that the titanium 'grindings' at the Leatherworks site are non-hazardous and had previously been determined to be non-hazardous by the EPA" and promised to assume resultant environmental liability should the titanium "grindings" be determined hazardous. In exchange, Leatherworks agreed to pay $5,000 in trust pursuant to terms provided, which would be released to Berk Realty et al., including interest, "[u]pon satisfactory removal of the titanium 'grindings.'" The money would be returned to Leatherworks if the grindings were not removed by August 31, 2000. The final statement of the judgment entry provided that "[t]he Court will allow the case to be reinstated upon Motion by either party upon failure of the entry to be fully executed."

On June 16, 2001, Leatherworks filed a civil action in Trumbull County against Berk Realty, ITPS, Samuel Berkowitz, and M. Berkowitz & Co., asserting claims related to the failure to remove the titanium grindings. On January 14, 2004, Leatherworks voluntarily dismissed the action without prejudice, instituting this federal case three months later.

Leatherworks's federal complaint, filed April 27, 2004, contained Count I for breach of contract, stemming from violation of the terms of the original purchase agreement, Count II for breach of contract as to the settlement agreement, which was incorporated in the December 16, 1999 state court judgment, Count III for fraudulent misrepresentation to induce purchase of the property,

Count IV for intentional interference with prospective business advantage related to failure to remove the materials and damage to the property, Count V for trespass based on failure to remove the materials, and Count VI for negligence based on attempted removal of materials. Berk Realty et al. filed a motion for summary judgment or, in the alternative, to dismiss for lack of subject matter jurisdiction for failure to meet the amount in controversy requirement.

In its decision, dated November 15, 2005, the district court determined that "entering judgment for *either* side would be inappropriate in the face of the history of matters between these parties." The court went on to acknowledge that "there [was] no presently pending state court litigation which would technically require abstention." However, the court found that "the matters at issue in plaintiffs' complaint have already clearly been litigated, or clearly arise out of the same facts already litigated, in Case No. 98-cv-1468 in the Trumbull County Court of Common Pleas." As a result, the court reasoned that "collateral estoppel certainly applies," and, acting *sua sponte*, it dismissed all claims without prejudice on those grounds.

## ANALYSIS

Leatherworks appeals the district court's November 15, 2005 order, asserting that "[t]he district court erred by *sua sponte* dismissing [its] claims on collateral estoppel grounds, without putting [Leatherworks] on notice that they had to put forth evidence to address those issues." In addition to raising the notice issue, Leatherworks contests the district court's dismissal on the merits, arguing that collateral estoppel did not bar consideration of any of its claims.

We need not decide here whether the district court's procedural decision to dismiss Leatherworks's claims *sua sponte* based on collateral estoppel constitutes an abuse of discretion, as the parties, on appeal, fully briefed the collateral estoppel issue, and we find that the district court

4

erred in dismissing all but the first count, which plaintiffs' counsel admitted at oral argument was identical to claims in the state court. It is our task to review the claims offered in Leatherworks's complaint to determine whether prior proceedings bar their litigation, a review that we conduct according to a de novo standard. *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005).

The district court decided that all Leatherworks's claims were collaterally estopped based on its general impression that "the matters at issue in plaintiffs' complaint ha[d] already clearly been litigated, or clearly arise out of the same facts already litigated, in Case No. 98-cv-1468 in the Trumbull County Court of Common Pleas." The court appeared to base its decision on the general sentiment that "[p]laintiffs [were] trying to get another 'bite at the apple' by asking *this* [federal] Court to relitigate matters already decided by a *state* court with continuing jurisdiction" (emphasis in original). This analysis is insufficient to dismiss the case on the basis of collateral estoppel. As the record before us is sufficient to determine whether the claims or issues embedded within the complaint are barred, we review each count to determine whether dismissal based on collateral estoppel was appropriate.

We give the Ohio state court judgment the same preclusive effect it is given under Ohio law. 28 U.S.C. § 1738 (2006); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). The fact that the judgment was the product of a settlement agreement does not change the analysis; Ohio treats a judgment incorporating a settlement agreement as a judgment on the merits, warranting the same preclusive effect as a judgment rendered after trial. *Sponseller v. Sponseller*, 144 N.E. 48, 49-50 (Ohio 1924) ("The decree having been made by the agreement of the parties was an adjudication as effective as if the merits had been tried . . . ."). Leatherworks, as the defendant in the original action, was required to bring any compulsory counterclaims it had against Berk Realty. Ohio R. Civ. P.

5

13(A). Failure to bring such claims operates as res judicata, which bars the defendant from raising the compulsory counterclaims in later litigation. *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 102 (Ohio 1994); *Geauga Truck & Implement Co. v. Juskiewicz*, 457 N.E.2d 827, 828 (Ohio 1984). Collateral estoppel also precludes the defendant from relitigating an issue that had been "actually and necessarily litigated and determined in a prior action." *Trautwein v. Sorgenfrei*, 391 N.E.2d 326, 328 (Ohio 1979). Ohio's motivation behind these rules is to give parties "an incentive to resolve conclusively an entire controversy involving the same core of facts." *Grava v. Parkman Township*, 653 N.E.2d 226, 230 (Ohio 1995). The party asserting preclusion bears the burden of demonstrating that the claim or issue is barred. *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 985 (Ohio 1983). We also examine the individual counts of Leatherworks's federal complaint to determine whether Leatherworks is asserting claims that were compulsory counterclaims in the 1999 state court action.[1]

Compulsory counterclaims are those that "at the time of serving the pleading the pleader has against any opposing party" which arise out of the same transaction or occurrence as the original claim. Ohio R. Civ. P. 13(A). It is therefore clear that claims maturing after serving are not considered compulsory counterclaims, and a defendant would be free to bring such claims in a later action. *Koehler*, 626 N.E.2d at 103. We now review each claim made in this action to determine whether any are alleged to be based upon events that had not occurred at the time of the 1999

---

[1]Although the district court stated that it was dismissing the case based on collateral estoppel, the opinion does not discuss any particular issues that were actually decided in prior state court litigation. Rather, in dismissing all claims before it, the district court stated that Leatherworks's federal complaint "merely attempts to reinstate old breach of contract claims and other claims related to the formation of the original contract," suggesting res judicata as the primary impetus for the dismissal.

6

judgment.[2]  We find this to be true for every count, with the exception of the first, so we remand these claims to the district court for decision on the merits.[3]

Counts II, IV, V, and VI of Leatherworks's federal complaint all pertain primarily to events occurring subsequent to the 1999 state court judgment, and thus they are not precluded. Specifically, Counts II and V are essentially based on violations of the 1999 settlement agreement itself and thus did not exist prior to judgment. Count II for breach of contract is based upon Berk Realty et al.'s failure to remove the titanium "grindings" by August 31, 2000, as it undertook to do in the settlement agreement. The substance of Leatherworks's Count V trespass claim is related, as it is based upon Berk Realty et al.'s "fail[ure] to remove its drums, titanium and other metals from the property when directed to do so, and . . . fail[ure] to remove these metals when it was obligated to do so. . . ." Both of these claims stemmed, at least in part, from violations of obligations contained within the 1999 settlement agreement, and therefore any failure to satisfy these obligations would have occurred after the 1999 state court judgment.

Counts IV and VI relate to problems stemming from the cleanup of the property occurring during the week ending January 31, 2004, obviously after the 1999 state court judgment. Count IV alleges intentional interference with prospective advantage, asserting that Berk Realty et al. "knowingly and intentionally obstructed and interfered with the development of the property and its cleanup . . . by failing to remove the drums on the land during the week ending January 31, 2004."

[2]We select the time of judgment because that is a date provided by the record, and it is much later than the time the defendant would have been served and so therefore any claims maturing after this date would not be compulsory counterclaims.

[3]Counsel for Leatherworks conceded at oral argument that its Count I claim for breach of contract was identical to the breach of contract claim brought in the prior state court action.  Thus, Count I is precluded by the 1999 state court judgment.

Leatherworks's Count VI claim for negligence finds its basis in the damage to the property that resulted from Berk Realty et al.'s removal efforts, which purportedly "damaged the property during the week ending January 31, 2004." Because the cleanup in question occurred years after the 1999 state court determination, claims related to it could not have been addressed by the state court in the course of that litigation. As a result, preclusion doctrines do not bar their assertion in this subsequent federal action.

Count III of Leatherworks's complaint asserting fraudulent misrepresentation to induce purchase requires more extensive analysis, as it partially pertains to the purchase event, suggesting that it would be a compulsory counterclaim. Although this count does allege misrepresentation at the time of the sale, which occurred prior to the 1999 state court's decision, this fraudulent misrepresentation claim explains that Leatherworks discovered chromium on the property in May 2002, which it subsequently had removed "under applicable environmental laws at a cost of more than $50,000" and that "Berk Realty either knew or should have known about the presence of . . . metals on the property." This count also claims that, in May 2004, Leatherworks discovered that chemicals Berk Realty failed to remove "contained lead or other characteristics that under law require controlled removal and disposal." Since a claim for fraud does not mature until the defrauded party becomes aware of the fraud, Leatherworks may not have had to assert this as a compulsory counterclaim; Leatherworks allegedly did not know of the claim at the time it was served.[4] *Leon v. Gabor*, No. 53297, 1988 WL 5230, at *2 (Ohio Ct. App. Jan. 21, 1988) (unpublished) ("[I]t is axiomatic that a claim does not exist until the party in question is aware of the

---

[4]We leave to the district court to decide whether Leatherworks should have been aware of these rights of action and, if so, whether it had a duty to assert them at an earlier date.

damage or injury giving rise to the claim."); *First Bank of Marietta v. Mitchell*, No. 82 X 5, 82 X 14, 1983 WL 3307, at *6 (Ohio Ct. App. Nov. 29, 1983) (unpublished) (implying that a claim for fraud does not exist until the fraud is discovered because the statute of limitations does not begin running until the time of discovery).

To conclude, we emphasize we do not decide the merits of Leatherworks's claims; we only determine that no prior litigation bars the district court from doing so. Just as Counts II through VI are not precluded from federal disposition by virtue of the substance of the past 1999 state court judgment, neither are they reserved for decision in the state court because the settlement provides for reinstatement of the case in the future "upon motion by either party upon failure of the entry to be fully executed." This provision does not *mandate* that all subsequent actions for breach of the settlement agreement or for any other claims between the parties relating to the settlement agreement *must* be brought before the same court. While the district court noted that the state court judge had indicated the parties could return to the court if there were a violation of the settlement agreement, there was no injunction, and the state court did not reserve jurisdiction. *See Waste Mgmt. v. City of Dayton*, 132 F.3d 1142, 1145 (6th Cir. 1997) (indicating that granting an injunction requires a court to retain jurisdiction). As neither party disputes that the requisite grounds for diversity jurisdiction exist, we find that this term of the state court settlement does not bar related but subsequent claims in federal court. *Cf. Kokkonen v. Guardian Life Insurance Co. of Am.*, 511 U.S. 375, 378 (1994) (stating that a claim regarding breach of a settlement agreement requires its own basis for federal jurisdiction).

**CONCLUSION**

9

For the foregoing reasons, we affirm the district court's dismissal of Count I of Leatherworks's complaint. We reverse the district court's dismissal of Counts II through VI Leatherworks's complaint on the basis of collateral estoppel, and we remand to the district court to consider those claims on the merits.